**IN THE COURT OF APPEALS OF IOWA**

No. 21-1819
Filed February 16, 2022

**IN THE INTEREST OF C.M.-P.,**
**Minor Child,**

**J.P., Father,**
　　　Appellant.
_____

　　　Appeal from the Iowa District Court for Woodbury County, Stephanie Forker Parry, District Associate Judge.


　　　A father appeals the termination of his parental rights to a child. **AFFIRMED.**


　　　Dean A. Fankhauser of Vriezelaar, Tigges, Edgington, Bottaro, Boden & Lessmann, L.L.P., Sioux City, for appellant father.

　　　Thomas J. Miller, Attorney General, and Michelle R. Becker, Assistant Attorney General, for appellee State.

　　　Joseph W. Kertels of Juvenile Law Center, Sioux City, attorney and guardian ad litem for minor child.


　　　Considered by Bower, C.J., and Vaitheswaran and Chicchelly, JJ.

**VAITHESWARAN, Judge.**

A father appeals the termination of his parental rights to a child born in 2018. He contends the State failed to prove the grounds for termination cited by the district court and termination was not in the child's best interests.

The district court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(e) and (f) (2021). We may affirm if we find clear and convincing evidence to support either of the grounds. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We will focus on section 232.116(1)(f), which requires proof of several elements, including proof the child cannot be returned to parental custody.

The child was removed shortly after her birth based on the mother's use of methamphetamine during the pregnancy. She was placed in an Iowa foster home, where she remained for a significant portion of the ensuing three years.[1] The district court adjudicated the child in need of assistance.

The father also used methamphetamine. He was incarcerated at the time of the child's birth and remained incarcerated for the first year of her life. On his release from prison, he elected to be paroled to Georgia, where his parents and sister lived, to "[g]et away from what [he] was doing before." On his release from parole approximately six months before the termination hearing, he chose to remain in Georgia for the sake of his jobs. He reiterated that Iowa was his "trigger" for criminal conduct.

---

[1] For part of the time, the child was placed with the mother at a substance-abuse facility.

The father's decision, while rational, precluded the development of a parental relationship with his child. Department personnel encouraged him to increase his time with the child and warned him that a failure to do so might affect his prospects for reunification. Despite this advice, the father returned to Iowa only once, when the child was almost two years old. He saw her for three half-hour sessions. His remaining contacts with the child were by weekly video visits of "about 15 minutes."

At the termination hearing, the father acknowledged he had not seen the child "that often lately," due to work commitments. In his words, "I really haven't had time for visits." He conceded missing "at least half of [his] visitation throughout the summer" preceding the termination hearing, resulting in total time with the child of less than two hours during that period. On our de novo review, we conclude the State proved the child could not be returned to the father's custody.

Termination must also serve the child's best interests. *See* Iowa Code § 232.116(2). The father notes that he made "great strides" in addressing "the issues that led to adjudication and removal." We agree. But without a meaningful parent-child relationship, the child could not safely be returned to his custody. We conclude termination was in the child's best interests.

The father also points to the "strong bond" he shared with the child. That assertion implicates an exception to termination. *See id.* § 232.116(3)(c).

There is no question the father loved the child. He expressed a desire "to have a chance to be a father, to be a dad," and he poignantly described the type of care he would provide. But he had limited opportunity to test his parenting skills. At one of the visits, the service provider who supervised the virtual visits noted that

the child "was focused on coloring" and "not much interaction occurred between them" other than the child's goodbye and kisses at the end of the visit.  In short, any bond the father had with the child was insufficient to override the safety concerns associated with transferring her to a parent she barely knew.

On our de novo review, we conclude termination was in the child's best interests and the court appropriately declined to invoke the exception to termination based on the parent-child bond.  We affirm termination of the father's parental rights to the child.

**AFFIRMED.**